No. 25-2008

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

DONALD SOUSA,

*Plaintiff-Appellant,*

---v.---

CHIPOTLE SERVICES, LLC,

*Defendant-Appellee.*

On Appeal from the United States District Court
For the District of New Mexico
The Hon. James O. Browning
No. 1:23-CV-0811 JB/JFR

**APPELLEE'S RESPONSE BRIEF**

Betsy Bulat
Maya S. Marshall
MARTENSON, HASBROUCK
& SIMON LLP
2573 Apple Valley Road NE
Atlanta, Georgia 30319
Tel.: (404) 909-8100

Carlos M. Quiñones
QUIÑONES LAW FIRM LLC
1223 S. Saint Francis Dr., Ste. C
Santa Fe, NM 87505-4053
Tel.: (505) 992-1515

*Counsel for Defendant-Appellee Chipotle Services, LLC*

**ORAL ARGUMENT NOT REQUESTED**

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... i

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION .................................................................................... 1

STATEMENT OF THE ISSUES ............................................................. 2

STATEMENT OF THE CASE ................................................................. 4

I.    FACTUAL BACKGROUND ........................................................... 4

    A. Chipotle's Operations and Commitment to Equal Employment
    Opportunity ..................................................................................... 4

    B. Chipotle's Commitment to Food Safety ...................................... 5

    C. Sousa's Employment with Chipotle ............................................ 6

    D. Sousa's Failure to Meet Chipotle's Food Safety Standards and
    Expectations .................................................................................... 6

    E.  Sousa's Former Colleagues' Employment with Chipotle ............... 9

II.   PROCEDURAL BACKGROUND ................................................. 11

SUMMARY OF ARGUMENT ............................................................. 13

STANDARD OF REVIEW ................................................................... 16

ARGUMENT ......................................................................................... 18

I.    THE DISTRICT COURT PROPERLY GRANTED SUMMARY
JUDGMENT TO CHIPOTLE BECAUSE SOUSA FAILED TO PROVE THAT
CHIPOTLE'S REASONS FOR HIS TERMINATION WERE PRETEXTUAL ... 18

II.   THE DISTRICT COURT CORRECTLY FOUND THAT THE
WARNINGS PROVIDED TO SOUSA DID NOT ESTABLISH PRETEXT ......... 20

i

A. Sousa's Argument That Chipotle Failed to Provide Written Warnings Before Termination Is Irrelevant Where, As Here, No Progressive Discipline Policy or Practice Exists...............................................................21

B. Sousa's Arguments that the Warnings Establish Pretext On Other Grounds Were Waived ......................................................................23

C. No Record Evidence Supports the Argument that the Warnings Show Hannan Did Not Believe His Proffered Reason for Sousa's Termination ....25

III. THE DISTRICT COURT PROPERLY APPLIED THE "NEARLY IDENTICAL" COMPARATOR EVIDENCE STANDARD TO SOUSA'S NMHRA CLAIM ..................................................................................30

IV. THE DISTRICT COURT PROPERLY ANALYZED SOUSA'S COMPARATOR EVIDENCE UNDER THE "COMPARABLE SERIOUSNESS" STANDARD AND PROPERLY FOUND THAT SOUSA DID NOT SHOW PRETEXT ...............................................................32

V. THE DISTRICT COURT PROPERLY CONSIDERED ALL RECORD EVIDENCE WHEN IT DETERMINED THAT THERE WAS NO ISSUE OF MATERIAL FACT AS TO THE EXISTENCE OF PRETEXT ..................36

**CONCLUSION**..............................................................................**39**

**STATEMENT OF COUNSEL AS TO ORAL ARGUMENT** ...........................**40**

**CERTIFICATION OF COMPLIANCE** ..............................................**42**

**CERTIFICATE OF DIGITAL SUBMISSION** ...................................**43**

**CERTIFICATE OF SERVICE** ...........................................................**44**

# TABLE OF AUTHORITIES

**Cases**

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664 (10th Cir. 1998) ................................17

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .............................................17

*Armelin v. Donahoe*, 608 F. App'x 695 (10th Cir. 2015).........................................24

*Bittel v. Pfizer, Inc.*, 307 F. App'x 132 (10th Cir. 2009) ..........................................37

*Celotex Corp. v. Cattrett*, 477 U.S. 317 (1986) .......................................................16

*Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526 (10th Cir. 1994) ....................27

*Deherrera v. Decker Truck Line, Inc.*, 820 F.3d 1147 (10th Cir. 2016).................26

*DePaula v. Easter Seals El Mirador*, 859 F.3d 957 (10th Cir. 2017)......................28

*Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299 (10th Cir. 2017) ...................................28

*E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028 (10th Cir. 2011) ..................... 19, 26

*Garcia v. Hatch Valley Pub. Sch.*, 2018-NMSC-020, ¶ 18, 458 P.3d 378 ..............30

*Glover v. NMC Homecare, Inc.*, 13 F. App'x 896 (10th Cir. 2001)........................32

*Good v. Dep't of Educ.*, 121 F.4th 772 (10th Cir. 2024) .........................................24

*Havens v. Colo. Dep't of Corr.*, 897 F.3d 1250 (10th Cir. 2018)............................24

*Herrera v. United Airlines, Inc.*, 754 F. App'x 684 (10th Cir. 2018)......................33

*Hysten v. Burlington N. Santa Fe Ry. Co.*, 415 F. App'x 897 (10th Cir. 2011) .......35

*Iweha v. State of Kansas*, 121 F.4th 1208 (10th Cir. 2024) .....................................22

*Johnson v. Weld Cty., Colo.*, 594 F.3d 1202 (10th Cir. 2010)........................... 19, 28

*Jones v. Azar,* 447 F. Supp. 3d 1121 (D.N.M. 2020)...............................................26

*Juneau v. Intel Corp.,* 139 N.M. at 15, 127 P.3d at 551 ...........................................19

*Kendrick v. Penske Transp. Servs., Inc.,* 220 F.3d 1220
  (10th Cir. 2000) ............................................................................... 21, 33, 37, 38

*Kincaid v. Unified Sch. Dist. No. 500, Kansas City, Kansas,* 94 F.4th 936
  (10th Cir. 2024) .....................................................................................................26

*Lobato v. N.M. Env't Dep't*, 733 F.3d 1283 (10th Cir. 2013) ...................................22

*Lucero v. Bd. of Directors of Jemez Mountains Coop., Inc.*,
  495 F. Supp. 3d 1135 (D.N.M. 2020) ..................................................................30

*Macon v. United Parcel Serv., Inc.*, 743 F.3d 708 (10th Cir. 2014)........................35

*Mann v. XPO Logistics Freight, Inc.*, 819 F. App'x 585 (10th Cir. 2020)..............37

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)......................... 13, 18, 19

*Mirzai v. State of New Mexico Gen. Servs. Dep't*, 506 F. Supp. 2d 767
   (D.N.M. 2007) ...................................................................................19
*Ocana v. Am. Furniture Co.*, 2004-NMSC-018, ¶ 23, 91 P.3d 58 ..........................31
*Oglesby v. Hy-Vee, Inc.*, 214 F. App'x. 829 (10th Cir. 2007) ..................................27
*Rea v. Martin Marietta Corp.,* 29 F.3d 1450 (10th Cir. 1994).......................... 19, 25
*Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133 (2000)..........................38
*Reynolds v. School District No.1 Denver,* 69 F.3d 1523 (10th Cir. 1995) ...............19
*Rivera v. City & County of Denver,* 365 F.3d 912 (10th Cir.2004).........................28
*Robinson v. St. John Med. Ctr., Inc.*, 645 F. App'x 644 (10th Cir. 2016) ...............39
*Sawyers v. Norton*, 962 F.3d 1270 (10th Cir. 2020)..................................................38
*Scott v. Harris*, 550 U.S. 372 (2007).......................................................................16
*Sidlo v. Millercoors, LLC*, 718 F. App'x 718 (10th Cir. 2018) ...............................16
*Smith v. FDC Corp.,* 109 N.M. 514 (1990)...............................................................18
*Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160 (10th Cir. 2007) .........33
*Timmerman v. U.S. Bank, N.A.,* 483 F.3d 1106 (10th Cir. 2007) ..................... 21, 35
*Untisz v. City of Greenwood Vill.*, 562 F. App'x 612 (10th Cir. 2014) ...................16
*Wade v. EMCASCO Ins. Co.*, 483 F.3d 657 (10th Cir. 2007) ..................................31

**Statutes**

New Mexico Human Rights Act, NMSA 1978, § 28-1-7(A) ...........................11, 18

**Rules**

Fed. R. Civ. P. 56(a) .................................................................................................16
Fed. R. Civ. P. 56(e) .................................................................................................16

**Other Authorities**

Jeffrey L. Kestler, § 2:65. Judge's questioning role—Effect of judge's
   comments, *Questioning Techniques and Tactics* § 2:65 (2025 ed.) ....................29

**\*There are no prior or related appeals.**

## <u>INTRODUCTION</u>

This is an appeal of the district court's order entering summary judgment in favor of Appellee Chipotle Services, LLC ("Chipotle") on Appellant Donald Sousa's ("Sousa") claim of age discrimination under the New Mexico Human Rights Act ("NMHRA"). The undisputed facts show that Chipotle terminated Sousa for failing to remedy a two-month long cockroach infestation at one of his restaurants and for failing to meet cleanliness standards at four of his other restaurants. It would have been inconceivable to retain Sousa in the face of his failure to ensure clean and food-safe conditions, and Chipotle correctly held Sousa accountable.

Sousa argues that the district court should have found Chipotle's reasons for his termination to be pretextual. In so arguing, Sousa mischaracterizes the district court's ruling by claiming the district court improperly weighed the evidence, made credibility determinations, applied the wrong comparator evidence standard, and failed to review the evidence as a whole. The district court did none of these things and properly found there was no fact issue to be tried on the reasons Sousa was fired.

To survive a motion for summary judgment, there must be some dispute as to whether an employee's age caused his discharge. Here, there is zero evidence that Chipotle's decision had anything to do with Sousa's age. Therefore, the district court properly entered summary judgment for Chipotle, and the Court should affirm.

1

## STATEMENT OF THE ISSUES

Sousa's statement of the issues does not delineate the specific arguments raised in his opening brief (the "Brief"). The issues presented by the ruling and Sousa's Brief are:

1. Whether the district court erred in deciding that the "warnings" given to Sousa at the time of termination to document past performance discussions do not establish pretext where Chipotle had no express or implied progressive discipline policy.

2. Whether Sousa waived the argument that the "warnings" establish pretext for any reason other than their violation of an alleged progressive discipline policy.

3. Whether "warnings" given at the time of termination to document past performance discussions establish pretext where the disciplinary forms do not cast doubt on the decisionmaker's reasons for Sousa's termination.

4. Whether the district court erred in applying, in part, the "nearly identical" comparator evidence standard when finding that Sousa did not show pretext with sufficient comparator evidence.

5. Whether the district court erred by deciding factual questions in addressing the record evidence under the "nearly identical" and "comparable seriousness" standards for showing pretext based on comparator evidence.

6.      Whether the district court properly weighed all record evidence as a whole when it determined that there was no issue of material fact as to the existence of pretext.

## STATEMENT OF THE CASE

In granting summary judgment, the district court adequately summarized the undisputed material facts in the body of the factual background section of its order, just as Chipotle did in its briefing on summary judgment. Chipotle restates the material facts that are relevant to this appeal below.

## I.   FACTUAL BACKGROUND

### A.   Chipotle's Operations and Commitment to Equal Employment Opportunity.

Chipotle Mexican Grill, Inc. owns and operates "fast casual" restaurants throughout the United States, Canada, and Europe that serve a focused menu of Mexican fare, consisting primarily of burritos, tacos, and salads. (App. Vol. 1 at 57, ¶ 5.)[1] The employees who work at Chipotle Mexican Grill, Inc. restaurants are employed by Chipotle Services, LLC, the appellee in this action. (*Id*. at ¶ 4.)

Chipotle is an equal opportunity employer and is committed to ensuring that its workplace is free from any form of discrimination, harassment, and retaliation. Chipotle maintains, and regularly updates, various Equal Employment Opportunity, anti-discrimination, anti-harassment, and anti-retaliation policies (often jointly referred to as its "Respectful Workplace Policy"), which are featured prominently in its employee handbooks and on posters in employee areas of restaurants. (App. Vol.

---

[1] Chipotle uses "App." to cite to Appellant's Appendix, noting the volume and page number to which each citation refers.

1 at 70-71, 65:1-9, 65:15-66:3; App. Vol. 1 at 82-85.) Employees are encouraged to communicate with any manager, supervisor, or regional human resource employee regarding their concerns, and they are also encouraged to contact the toll-free Confidential Respectful Workplace Hotline at any time or on any day. (*Id*.)

   **B.**     **Chipotle's Commitment to Food Safety.**

   In addition to being committed to ensuring the workplace is free from all unwelcome behavior, Chipotle is also committed to food safety and cleanliness. (App. Vol. 1 at 66, 28:3-9.) All employees are required to comply with Chipotle's food safety programs and practices, including, but not limited to, Chipotle's Critical Control Points, Illness Policy, Handwashing Policy, and Food Safety Seven. (App. Vol. 1 at 57, ¶ 6.) Failure to comply with any of Chipotle's food safety programs and practices is grounds for discipline, including termination. (*Id.*; App. Vol. 1 at 84; App. Vol. 1 at 70, 65:1-9.) Pursuant to Chipotle's Multistate Handbook, Chipotle reserves the right to discipline and terminate employees at its discretion. (*See* App. Vol. 1 at 84.) When, in the opinion of Chipotle, a problem is so serious that the first offense warrants termination, the employee may be terminated immediately. (*Id*.) Sousa understood that he was responsible for enforcing the Handbook, and he was aware that he could be terminated for the failure to abide by Chipotle's food safety and cleanliness policies. (App. Vol. 1 at 66, 27:21-28:9; App. Vol. 1 at 70, 65:6-9; App. Vol. 1 at 79, 102:5-102:11.)

**C.**    **Sousa's Employment with Chipotle.**

On June 3, 2019, Chipotle hired Sousa to work as a Field Leader. At the time of hire, Sousa was approximately 54 years old. (App. Vol. 1 at 65, 25:1-25:16; App Vol. 1 at 87-88.) At Chipotle, a Field Leader supervises a "patch" of around six to ten Chipotle restaurants and reports to a Team Director. From April 2021 to his termination, Sousa reported to Team Director Patrick Hannan ("Hannan"). (*Id*; App. Vol. 1 at 67, 32:6-32:17, 32:24-33:3.) Hannan was only slightly younger than Sousa, as he was 48 years old at the time of Sousa's hiring. (*See* App. Vol. 1 at 57, ¶ 1; App. Vol. 1 at 91, 40:4-40:6.) During the time that Sousa worked for Hannan, over half of the Field Leaders that Hannan managed were over the age of 40 (i.e., four of seven). (App. Vol. 1 at 91, 38:8-40:22; App. Vol. at 58, ¶ 10.)

**D.**    **Sousa's Failure to Meet Chipotle's Food Safety Standards and Expectations.**

On February 7, 2022, an employee at one of the restaurants located in Sousa's patch, the University of New Mexico ("UNM") location, submitted a service channel request to seek assistance with "a bad roach infestation throughout the restaurant." (App. Vol. 1 at 103-107; App. Vol. 1 at 72, 72:4, 72:21-73:21.) Upon being notified about the service request, Sousa indicated that he had no knowledge of the infestation and confirmed that he planned to visit the restaurant the following day. (*Id*.)

6

Hannan, who had just learned of the infestation on February 8, 2022, met Sousa at the UNM restaurant on February 9, 2022, and was shocked by the condition of the restaurant. (App. Vol. 1 at 94, 70:2-9.) Not only did the condition of the restaurant fall significantly below Chipotle's cleanliness standards, but he also saw dozens of cockroaches throughout the restaurant. (*Id*.) After inspecting the UNM restaurant, Hannan spoke with Sousa about the lack of action that had been taken in the days since the initial submission of the service request and the seriousness of the infestation; he was concerned about the major food safety risks it posed. (*Id*. at 70:2-9, 70:19-24; App. Vol. 1 at 73, 81:12-15; App. Vol. 1 at 74, 82:21-23.) While all infestations are serious to Chipotle, the urgency of addressing this one was heightened by the fact that Chipotle's pest vendor determined that the infestation was the result of unclean conditions in the restaurant, and not because of any structural issue that could have allowed cockroaches in from outside the restaurant. (*See* App. Vol. 1 at 109; App. Vol. 1 at 93, 64:4-64:10, 65:4-65:12.)

Between February 9, 2022 and March 17, 2022, the infestation persisted. (App. Vol. 1 at 75, 88:20-24; App. Vol. 1 at 76, 93:11-24; App. Vol. 1 96, 87:20-25.) Sousa and Hannan spoke several times during this period about the status of the infestation, with Hannan continuing to advise Sousa that the issue needed to be resolved immediately. (App. Vol. 1 at 111-112.) On March 17, 2022, Hannan learned that Sousa allowed the Orkin treatments to drop off for over two weeks. (*Id*.; App.

Vol. 1 at 75, 88:13-19; App. Vol. 1 at 73, 81:2-81:5; *see* App. Vol. 1 at 215.) In the following days, Hannan followed up on the status of the infestation with Sousa and continued to stress the importance of resolving the infestation and ensuring that his restaurants met Chipotle's food safety standards. (*See* App. Vol. 1 at 75, 86:16-19, 86:24-87:4; App. Vol. 1 at 76, 90:12-18, 93:11-23.) The infestation remained unresolved. (App. Vol. 1 at 132-133.)

During the time Sousa should have been working to remedy the cockroach infestation and improve the overall cleanliness of his restaurants, within the span of one week, four of Sousa's other restaurants failed to meet cleanliness standards during internal site audits. (App. Vol. 1 at 111-112; App. Vol. 1 at 73, 81:2-5; App. Vol. 1 at 119; App. Vol. 1 at 77, 94:23-95:7, 95:12-95:21; App. Vol. 1 at 121; App. Vol. 1 at 77, 96:14-15, 96:21-96:25, 97:4-97:9; App. Vol. 1 at 123; App. Vol. 1 at 78 at 98:3-98:17, App. Vol. 1 at 125-130; App. Vol. 1 at 78, 99:5-99:15.) Sousa agrees these four restaurants did not meet cleanliness standards. (*See*, e.g., App. Vol. 1 at 77, 95:22-96:3, 97:15-17, 99:12-15.)

After the cockroach infestation at Sousa's UNM restaurant had persisted for nearly two months, Hannan made the business decision to terminate Sousa because his continued employment created an unacceptable health risk for Chipotle and its customers. Sousa had demonstrated a lack of urgency and commitment to resolving the infestation and failed to take the steps necessary to keep his other restaurants

clean. (App. Vol. 1 at 59, ¶ 19, 21; App. Vol. 1 at 111-112; App. Vol. 1 at 87-88; *See* App. Vol. 1 at 95, 85:1-9.)

Based on Hannan's decision, Caroline Barcelona, the Human Resources representative with whom Hannan worked, directed Hannan to provide Plaintiff with two warnings outlining the progression of events leading up to his termination, as well as one termination form. (App. Vol. 1 at 97, 98:16-20; App. Vol. 1 at 136-137, 29:23-30:9.) The written warnings were provided on Chipotle's standard corrective action forms. (*See e.g.,* App. Vol. 1 at 61-62.) The format, structure, and headings in the standard corrective action forms, or warnings, cannot be revised or amended, so neither Barcelona nor Hannan were able to tailor them for their specific use. (*Id.*) The warnings were intended to memorialize what prompted the termination decision and to recite the history of Hannan's related counseling discussions with Sousa, not to provide a pre-termination warning. (App. Vol. 1 at 97, 99:19-23.) Sousa does not dispute that the vast majority of the information memorialized in the forms is accurate. (App. Vol. 1 at 73, 81:8-20; App. Vol. 1 at 74, 82:21-23; App. Vol. 1 at 75, 86:10-87:15, 88:7-10, 88:13-24; App. Vol. 1 at 76, 90:12-91:20, 92:2-12, 93:11-21.)

## E.    Sousa's Former Colleagues' Employment with Chipotle.

After Plaintiff filed the underlying lawsuit, he alleged that two other Field Leaders who were under 40, Leidy Chaparro ("Chaparro") and Edwin Sanchez ("Sanchez"), experienced pest and cleanliness issues similar to his. The infestation

and failed audits at Sousa's restaurants, however, are distinguishable from any alleged issues in Chaparro's and Sanchez's restaurants.

### 1. *Leidy Chaparro's employment with Chipotle.*

Chaparro replaced Sousa after he was terminated. (App. Vol. 1 at 98, 119:21-24.) By the time Chaparro took over the Field Leader position, the cockroach infestation at the UNM restaurant had been resolved. (*Id.*; App. Vol. 1 at 99, 126:20-25; App. Vol. 1 at 140-141, 13:25-14:4.) Approximately one month into Chaparro's new role as Field Leader, the UNM restaurant failed one EcoSure food safety audit. (App. Vol. 1 at 238; App. Vol. 1 at 140-141, 13:25-14:4.) No record evidence supports any other food safety or cleanliness concerns relating to Chaparro's restaurants.

### 2. *Edwin Sanchez's employment with Chipotle.*

Sanchez was another Field Leader Hannan supervised. (App. Vol. 1 at 91, 39:8-13.) A few of Sanchez's restaurants had pest sightings. There was a rodent sighting at Store No. 1684 and another at Store No. 1767; a cockroach sighting at Store Nos. 1726, 1767, 923, and 898; a fruit fly sighting at Store No. 923; and ant sightings at Store No. 898. (App. Vol. 1 at 147-148; App. Vol. 1 at 160-161; App. Vol. 2 at 267-268.) These pest sightings were either merely sightings or the result of structural issues at the restaurant or both; they were all properly handled by Sanchez. (App. Vol. 2 at 267-268; App. Vol. 2 at 228-232; App. Vol. 2 at 306-307, 89:24-91:4;

10

App. Vol. 2 at 308, 94:10-13, 96:13-14, 96:24-97:1, 97:5-15; App. Vol. 2 at 309-310, 100:8-101:8, 101:12-102:7, 103:2-15, 104:5-23; App. Vol. 2 at 311, 107:2-9, 108:9-15, 108:22-25; App. Vol. 2 at 315, 122:17-21.) In other words, some of these sightings had nothing to do with cleanliness at all. Others were unknown to Hannan and quickly resolved.[2] (App. Vol. 2 at 267-268; App. Vol. 2 at 308, 94:14-19, 97:2-4; App. Vol. 2 at 310, 103:25-104:4; App. Vol. 2 at 311, 109:1-4; App. Vol. 2 at 315, 122:17-21; *see* App. Vol. 1 at 228-232.) There is no record evidence suggesting that Sanchez was responsible for the pest sightings, failed to properly address them, or mishandled them in any way.

## II.    **PROCEDURAL BACKGROUND**

Sousa filed his Amended Complaint in the Thirteenth Judicial District Court, County of Sandoval, State of New Mexico on August 16, 2023, alleging a single claim of discriminatory termination based on his age under the New Mexico Human Rights Act, NMSA 1978, § 28-1-7(A). (App. Vol. 1 at 4, Doc. 1.) On September 20, 2023, Chipotle removed this action to the United States District Court for the District of New Mexico. (*Id.*)

---

[2] The distinguishing circumstances between Sousa's food safety and cleanliness issues and the issues he pointed to involving Chaparro and Sanchez are comprehensively summarized in Chipotle's reply brief filed in support of its motion for summary judgment. (App. Vol. 2 at 267, 268.)

On June 17, 2024, Chipotle filed its motion for summary judgment on the grounds that Sousa did not have any direct or circumstantial evidence rendering his single claim of age discrimination suitable for trial. (App. Vol. 1 at 9, Doc. 64.) On July 24, 2024, Sousa opposed Chipotle's motion, and Chipotle filed its reply brief in support of its motion on September 27, 2024. (App. Vol. 1 at 10, Doc. 73; App. Vol. 1 at 11, Doc. 80.)

On October 24, 2024, the district court held a hearing on Chipotle's motion for summary judgment. (App. Vol. 1 at 11, Doc. 84.) As is appropriate during oral argument, the district court challenged both parties by posing theoretical questions and inquiries regarding their arguments and the record evidence. (*See* App. Vol. 2 at 323-369.) Throughout the hearing, the court made clear it was still digesting the facts and had not reached a decision on how it was going to rule. (*See* App. Vol. 2 at 325-326, 3:25; App. Vol. 2 at 363, 41:6-10; App. Vol. 2 at 367, 45:20-24.)

On January 10, 2025, the district court issued a memorandum opinion and order granting Defendant's motion for summary judgment because of Sousa's failure to meet his burden of showing, through record evidence, that Chipotle's reason for terminating him was pretextual. (App. Vol. 2 at 371.) Once the final judgment was entered on January 14, 2025, Sousa filed his notice of appeal with the district court on January 23, 2025. (App. Vol. 1 at 12, Doc. 93, 94.) Sousa filed his Brief in this Court on May 14, 2025.

## SUMMARY OF ARGUMENT

The Court should affirm the district court's grant of summary judgment in Chipotle's favor on Sousa's claim for age discrimination under the NMHRA. Using the applicable burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the district court properly determined that Chipotle articulated legitimate reasons for terminating Sousa's employment – he failed to keep his restaurants clean and safe. Sousa failed to resolve a two-month long cockroach infestation and failed to meet cleanliness standards on four site audits in a single week.

Sousa offered no evidence to put these reasons for his termination in question, and there is no credible evidence from which a reasonable jury could find that Chipotle's stated reasons for Plaintiff's termination were pretext for age discrimination. Accordingly, the district court properly concluded no genuine issue of material fact existed as to pretext and granted summary judgment in Chipotle's favor.

As to the supposed errors Sousa identifies on appeal, none warrant reversal. First, the district court properly concluded that the written warnings administered to Sousa at the time of his termination did not create an issue of material fact as to pretext because Sousa failed to provide evidence that they were submitted in violation of an express or implied progressive discipline policy. As to Sousa's new

argument that the warnings show pretext because they somehow prove Hannan did not believe the reasons for which he terminated Sousa, Sousa waived this argument by failing to argue it before the district court. Even if Sousa had not waived this argument, none of Sousa's evidence supports the argument that the warnings showed Hannan did not believe the reasons proffered for terminating Sousa. The warnings instead support the reasons for his termination.

Second, the district court properly applied, in part, the "nearly identical" comparator evidence standard when analyzing Sousa's claim under the NMHRA because (1) Sousa brought this lawsuit solely under New Mexico law, (2) the New Mexico Supreme Court applies the "nearly identical" standard when analyzing comparator evidence under the NMHRA, and (3) federal courts are required to ascertain and apply substantive state law for NMHRA claims.

Third, the district court properly analyzed Sousa's comparator evidence under the "comparable seriousness" standard. The district court applied this standard to correctly find that Sousa failed to prove alleged comparators Sanchez and Chaparro committed workplace violations of comparable seriousness to Sousa's violations. The record evidence demonstrates Sanchez's and Chaparro's alleged issues or violations were not comparable because they (1) involved an isolated sighting and not an infestation, (2) were the result of a structural issue outside their control, (3)

14

were properly handled and addressed, (4) were unknown to Hannan, or (5) involved some combination of two or more of the aforementioned distinguishing factors.

Fourth, the district court properly weighed all record evidence as a whole when it determined that there was no issue of material fact as to pretext. No record evidence disputes the reason given for Sousa's termination. Accordingly, the district court's order and judgment should be affirmed.

## <u>STANDARD OF REVIEW</u>

A summary judgment movant must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Chipotle agrees the Court reviews a summary judgment ruling de novo. The Court does so under the same standard that district courts apply, reviewing the record in the light most favorable to, and drawing reasonable inferences in favor of, the nonmovant. *Untisz v. City of Greenwood Vill.*, 562 F. App'x 612, 613 (10th Cir. 2014); *Sidlo v. Millercoors, LLC*, 718 F. App'x 718, 725 (10th Cir. 2018).

While the initial burden is on the moving party to demonstrate there are no genuine issues of material fact, this burden may be discharged by showing an absence of evidence to support an essential element of the non-movant's claim. *Celotex Corp. v. Cattret*, 477 U.S. 317, 323 (1986). The non-movant must proffer evidence demonstrating the existence of a *genuine* material issue of fact for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict

16

for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[A]lthough [the Court's] review is de novo, [it must] conduct that review from the perspective of the district court at the time it made its ruling, ordinarily limiting [the] review to the materials adequately brought to the attention of the district court by the parties." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

## **ARGUMENT**

### I. THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT TO CHIPOTLE BECAUSE SOUSA FAILED TO PROVE THAT CHIPOTLE'S REASONS FOR HIS TERMINATION WERE PRETEXTUAL.

To avoid summary judgment in Chipotle's favor, Sousa must show that the reasons for his termination were pretextual. Chipotle terminated his employment based on unacceptable work performance and the failure to keep his restaurants clean and safe. There is no dispute that these reasons were nondiscriminatory, and Sousa did not and cannot show they were pretextual.

Under the NMHRA, employment discrimination based on age is prohibited. *See* NMSA 1978, § 28-1-7(A). Like federal courts interpreting the Age Discrimination in Employment Act of 1967 (ADEA), the Supreme Court of New Mexico uses the evidentiary methodology developed in *McDonnell Douglas Corp. v. Green* to provide guidance on interpreting the NMHRA and analyzing discrimination claims when there is no direct evidence of discrimination, as here.[3] *Smith v. FDC Corp.,* 109 N.M. 514, 517-18 (1990).

The *McDonnell Douglas* framework consists of the following analysis:

> "[A]n employee bears the initial burden of demonstrating a prima facie case of discrimination, which then shifts the burden to the employer to provide a legitimate, non-discriminatory reason for the adverse

---

[3] Sousa concedes he has no direct evidence of age discrimination, and that no one from Chipotle ever made any age-related remarks to him. (App. Vol. 1 at 69, 41:17-21, 41:22-25.)

18

employment action. The employee then has the opportunity to rebut the employers proffered reason as pretextual or otherwise inadequate."

*Juneau v. Intel Corp.,* 139 N.M. at 15, 127 P.3d at 551 (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. at 802–05). "Both the Tenth Circuit and the Supreme Court of New Mexico have acknowledged that the *McDonnell Douglas* framework is appropriate for discrimination claims brought under the [NM]HRA involving indirect evidence of discrimination." *Mirzai v. State of New Mexico Gen. Servs. Dep't*, 506 F. Supp. 2d 767, 781 (D.N.M. 2007).

A plaintiff may establish that an employer's reasons for termination are pretextual by showing either "that a discriminatory reason more likely motivated the employer or ... that the employer's proffered explanation is unworthy of credence." *Rea v. Martin Marietta Corp.,* 29 F.3d 1450, 1455 (10th Cir. 1994). This "requires a showing that the tendered reason for the employment decision was not the genuine motivating reason, but rather was a disingenuous or sham reason." *Reynolds v. School District No.1 Denver,* 69 F.3d 1523, 1535 (10th Cir. 1995). However, the Court "examine[s] the[se] facts as they appear to the person making the decision, not the plaintiff's subjective evaluation of the situation." *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1044 (10th Cir. 2011). The complaining employee's evidence cannot merely amount to a suggestion that the employer "got it wrong" or that it made a bad business decision. *See Johnson v. Weld Cty., Colo.*, 594 F.3d 1202, 1211 (10th Cir. 2010).

The district court correctly determined that Sousa could not establish an issue of material fact as to pretext because he failed to present sufficient evidence to undermine Hannan's non-discriminatory reason for terminating him. As described below, Sousa's enumerations of error ring hollow and do not call the district court's finding on pretext into question. The district court's decision should be affirmed.

## II.    THE DISTRICT COURT CORRECTLY FOUND THAT THE WARNINGS PROVIDED TO SOUSA DID NOT ESTABLISH PRETEXT.

Sousa first argues that this Court should reverse the district court's decision because the district court declined to find pretext based on two written warnings given to Sousa on the same day Chipotle fired him. Viewing all facts in the light most favorable to Sousa the district court explained that a fact finder could find the records to be suspect or strange only if they differed from Chipotle's usual policies or practices (i.e., a progressive discipline policy). (App. Vol. 2 at 454-454.) The district court correctly found as an undisputed fact that Chipotle did *not* have a written or unwritten progressive discipline policy. Accordingly, it was not error for the district court to find that these records do not show pretext.

Despite these findings, Sousa ignores his failure to prove the existence of a progressive discipline policy or practice. Instead, he focuses on vague allegations that the district court made a credibility determination in favor of Hannan about the reasons he created the warnings and that those reasons were somehow relevant to

the pretext analysis – something the district court never did and something Sousa never argued before the district court. For these reasons and the others discussed below, this Court should affirm the district court's finding that the warnings provided to document past counseling conversations have no bearing on the pretext analysis, particularly in the absence of a progressive discipline policy or practice.

### A. Sousa's Argument That Chipotle Failed to Provide Written Warnings Before Termination Is Irrelevant Where, As Here, No Progressive Discipline Policy or Practice Exists.

The district court correctly determined that the warnings did not establish pretext because Sousa did not point to any record evidence showing they were provided in violation of a policy or practice.[4] (App. Vol. 2 at 453.) Instead of providing this proof, Sousa argued that the "warnings" *implied* the existence of a progressive discipline policy with which Hannan failed to comply. (App. Vol. 1 at 159-160.) However, to show pretext, Sousa was required to point to "*evidence* that the defendant acted contrary to a written company policy prescribing the action to be taken . . . under the circumstances." *Timmerman v. U.S. Bank, N.A.,* 483 F.3d 1106, 1119 (10th Cir. 2007) (emphasis added); *Kendrick v. Penske Transp. Servs., Inc.,* 220 F.3d 1220, 1230 (10th Cir. 2000). On the other hand, "where 'progressive

---

[4] Instead, Sousa makes the amorphous argument that the warnings "weighed heavily into Mr. Hannan's credibility and believability as to his proffered reasons for terminating Mr. Sousa," without explaining how. (*See* Brief at 19 n.1.) Sousa raises this argument for the first time in this appeal and therefore has waived this argument. Nevertheless, his new argument is addressed in the sections below.

discipline [is] entirely discretionary,' and the employer 'did not ignore any established company policy in its choice of sanction, the failure to implement progressive discipline is not evidence of pretext.'" *Iweha v. State of Kansas*, 121 F.4th 1208, 1226 (10th Cir. 2024) (quoting *Lobato v. N.M. Env't Dep't*, 733 F.3d 1283, 1291 (10th Cir. 2013)). Accordingly, absent evidence of a progressive discipline policy or a showing that the employer departed from a progressive discipline policy, a pretext claim grounded in the procedure prescribed by such a policy fails.

Sousa failed to point to any evidence supporting the existence of a progressive discipline policy and failed, again, to do so here because none exists. (*See* App. Vol. 1 at 159-160; App. Vol. 2 at 453-454.) Chipotle's Multistate Employee Handbook, which Sousa received and was responsible for enforcing, states:

> "Chipotle reserves the right to discipline and terminate employees. When, in the opinion of Chipotle, a problem with your performance, attendance, or any other problem becomes apparent, disciplinary action may be taken, up to and including termination. *When, in the opinion of Chipotle, a problem is so serious that the first offense warrants termination, the employee may be terminated immediately*. Any action taken in an individual case should not be assumed to establish a precedent in other circumstances."

(App. Vol. 1 at 84 (emphasis added).) A plain reading of this policy shows that Chipotle supervisors have complete discretion to determine the level of discipline; therefore, the district court correctly found this policy "expressly disclaims the need for progressive discipline." (App. Vol. 2 at 454.)

To be sure, Sousa fails to point to any Chipotle policy that required it to provide Sousa with written warnings summarizing prior disciplinary conversations before issuing a termination decision. Nor did any policy require Hannan to provide Sousa with a written explanation of the reasons for Sousa's termination. The undisputed evidence shows he did so only because HR told him to do so. In other words, there is no evidence, and it is undisputed, that Hannan did not violate any Chipotle policies when he issued the two warnings to Sousa in conjunction with his termination. The district court properly found that Hannan's actions did not establish pretext.

### B.    <u>Sousa's Arguments that the Warnings Establish Pretext On Other Grounds Were Waived</u>.

Rightly recognizing the futility of renewing the argument above, Sousa pivots to a new argument: he now argues that the "reasons why Mr. Hannan created the two warnings are highly material to the issue of pretext" and that the district court improperly made a credibility determination regarding these reasons. (Brief at 20.) To the trial court, however, Sousa argued only that the warnings were "sham" warnings submitted in breach of an implied policy of progressive discipline. (App. Vol. 2 at 387-388.) Sousa has waived any argument that the warnings show pretext for any reason other than their purported breach of an express or implied progressive discipline policy.

Indeed, the Tenth Circuit "ordinarily deem[s] arguments that litigants fail to present before the district court but then subsequently urge on appeal to be forfeited." *Good v. Dep't of Educ.*, 121 F.4th 772, 801 (10th Cir. 2024) (citing *Havens v. Colo. Dep't of Corr.*, 897 F.3d 1250, 1259 (10th Cir. 2018)). Arguments not made before the district court can form the basis for reversal only if the appellant can satisfy the plain error standard of review, and a litigant's failure to argue for a plain error standard of review on appeal dooms its argument for reversal concerning issues that they failed to raise with the district court. *Good*, 121 F.4th at 801-802.

Here, Sousa did not argue that the warnings demonstrated pretext for any reason other than their breach of a supposed progressive discipline policy at Chipotle. And Sousa does not argue for a plain error review on appeal. Accordingly, the Court should deem waived any argument that the warning forms show pretext for any reason other than their breach of a supposed progressive discipline policy. *See Armelin v. Donahoe*, 608 F. App'x 695, 696 (10th Cir. 2015) ("This court generally does not consider arguments not raised in the district court. . . . When a party forfeits an argument by failing to raise it, we may review for plain error . . . But [appellant] has not argued for plain-error review, and that failure acts as a waiver in this court") (internal citations omitted).

### C.    No Record Evidence Supports the Argument that the Warnings Show Hannan Did Not Believe His Proffered Reason for Sousa's Termination.

Even if the Court considers Sousa's new argument regarding pretext based on the warnings, which the Court should not, his arguments that the warnings demonstrate pretext remain unavailing. Sousa now focuses on vague allegations that the district court made a credibility determination in favor of Hannan by believing his reasons for creating the warnings. Sousa apparently contends that a dispute over why the warnings were issued would somehow place in question whether Hannan honestly believed the reasons for Sousa's termination. Even if such a dispute existed, it would not establish pretext.

To start, Sousa cites no authority for the premise that a fact issue about why Hannan created the warnings at the time of Sousa's termination shows pretext. In other words, even if there is a fact issue about why Hannan created the warnings, how does that show that Chipotle's "proffered explanation is unworthy of credence"? *Rea*, 29 F.3d at 1455. Sousa never addresses or answers this question because there is no helpful answer for him.

Regardless of why the warnings were created, Sousa admits they were accurate. (App. Vol. 1 at 73, 81:8-20; App. Vol. 1 at 74, 82:21-23; App. Vol. 1 at 75, 86:10-87:15, 88:7-10, 88:13-24; App. Vol. 1 at 76, 90:12-91:20, 92:2-12, 93:11-21.) As to any inaccuracy, there is no record evidence that Hannan believed any

information in the warnings was anything other than true. *See Jones v. Azar,* 447 F. Supp. 3d 1121, 1134 (D.N.M. 2020) (the district court "…examine[s] the facts as they appear to the person making the decision, not the plaintiff's subjective evaluation of the situation"); *see also E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1044 (10th Cir. 2011). In light of Hannan's good faith belief in the accuracy of the information in the warnings and the fact they support the reasons given for Sousa's termination, they do not make Hannan's reasons any less worthy of belief.

Even if a fact issue as to the reason the warnings were created could establish pretext, which it cannot, the district court did not improperly weigh evidence or make a credibility determination in favor of Chipotle. Rather, the district court properly analyzed the record—which did not contain any evidence conflicting with Hannan's proffered reason for termination—in the light most favorable to Sousa, while also considering the facts as they appeared to Hannan. *Kincaid v. Unified Sch. Dist. No. 500, Kansas City, Kansas,* 94 F.4th 936, 949 (10th Cir. 2024) ("Although the court 'must draw all factual inferences in favor of the nonmovant, those inferences must be reasonable.'") (quoting *Deherrera v. Decker Truck Line, Inc*., 820 F.3d 1147, 1159 (10th Cir. 2016)). Given Sousa's failure to present contradictory evidence, the district court correctly concluded that no genuine issue of material fact existed.

       1.     *There is no dispute regarding why Hannan created the warnings in the record – he provided them only at HR's direction.*

Sousa contends that the district court improperly found that Hannan created the warnings because Chipotle's HR representative told him to but cites no contradictory record evidence. Instead, it is undisputed both that (1) Hannan made the decision to fire Plaintiff, and (2) HR directed the drafting and delivery of the warnings. (*See* App. Vol. 1 at 47, SUMF No. 39.) Barcelona was not the decision-maker in this case, but it was her decision to prepare the termination paperwork and warnings.

There is no record evidence that Sousa's termination paperwork was attributable to Hannan. Since Hannan, the decisionmaker, had nothing to do with deciding upon the form of the paperwork, it does not render Hannan's reasons for Plaintiff's termination any less worthy of belief, and the documents do not support a finding of pretext. *See Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 531 (10th Cir. 1994); *see also Oglesby v. Hy-Vee, Inc.*, 214 F. App'x. 829, 836 (10th Cir. 2007) (comments and actions of non-decisionmakers are not material to pretext analysis).

       2.     *Only Hannan's good faith, subjective perspective on why the warnings were created is material to the pretext analysis, and the district court made no credibility determination.*

In his Brief, Sousa relies on his own, unsupported opinion that the warnings were "false" and that this alleged falsity creates a question as to Hannan's credibility.

27

Sousa's personal opinion on the nature of the warnings, however, is not material to the pretext analysis or a credibility determination, and no record evidence calls into question Hannan's reasons for providing the warnings.

A court's role in assessing a challenge of pretext is not "to ask whether the employer's decision was wise, fair or correct, but whether it honestly believed the legitimate, nondiscriminatory reasons it gave for its conduct and acted in good faith on those beliefs." *Johnson*, 594 F.3d at 1211 (quoting *Rivera v. City & County of Denver,* 365 F.3d 912, 925 (10th Cir.2004)) (internal punctuation omitted). It is a court's role to "prevent intentional discriminatory ... practices, not to act as a super personnel department, second guessing employers' honestly held (even if erroneous) business judgments." *Dewitt v. Sw. Bell Tel. Co*., 845 F.3d 1299, 1308 (10th Cir. 2017) (internal punctation omitted). A court is thus tasked with examining "the facts as they appear *to the person making the decision*, and…not look to the plaintiff's subjective evaluation of the situation." *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 971 (10th Cir. 2017) (internal citations omitted).

Therefore, if the employee is unable to present sufficient conflicting evidence about the employer's subjective belief in the reason for termination, there is no issue of material fact as to pretext. Sousa has presented no conflicting evidence bearing on Hannan's good faith, subjective belief about why the warnings were provided.

Sousa's own opinions on the warnings have no bearing on Hannan's credibility or whether they render the given reasons for his termination unworthy of belief.

Recognizing his failure to point to contradictory record evidence, Sousa now attempts to manufacture a fact issue based on a passing comment during the district court's oral argument on Chipotle's motion for summary judgment. The district court's offhand remark that the written warnings looked "a little bit kinda cooked up" [*see* Brief at 21] is not evidence and is not a part of the legal analysis that Sousa asks the Court to review.

A stray remark by the trial court judge cannot create a fact issue on summary judgment. An opinion expressed from the bench but not relied upon in a formal opinion is not binding, because the judge is permitted to adopt, revise, or abandon prior perspectives or assessments until the entry of judgment. *See* Jeffrey L. Kestler, § 2:65. Judge's questioning role—Effect of judge's comments, *Questioning Techniques and Tactics* § 2:65 (2025 ed.). In other words, to the extent the district court judge's quip actually represented a legal opinion—which is not even clear— he was free to abandon it, which it is clear he did because it is not expressed anywhere in the order the district court entered. In other words, it is a complete nullity, and Sousa's attempt to contrive a factual dispute using it is improper.

29

For the reasons above, the district court properly concluded that the warnings did not constitute evidence of pretext, and the district court's decision should be affirmed.

### III. THE DISTRICT COURT PROPERLY APPLIED THE "NEARLY IDENTICAL" COMPARATOR EVIDENCE STANDARD TO SOUSA'S NMHRA CLAIM.

Sousa next contends that the district court erred by misapplying the "nearly identical" standard for comparator evidence. (Brief at 22-23.) Notably, Sousa does not cite any authority for the proposition that this standard does not apply to claims under the NMHRA. Sousa cites no such authority because none exists. To the extent the district court relied on the "nearly identical" standard, it was required by controlling law.

The New Mexico Supreme Court has confirmed that, in order to show pretext based on more favorable treatment of a similarly situated employee outside a plaintiff's protected class, the comparator's misconduct must be "nearly identical" under the NMHRA. *Garcia v. Hatch Valley Pub. Sch.*, 2018-NMSC-020, ¶ 18, 458 P.3d 378, 388-389. Because Sousa has only asserted a claim under the NMHRA, this New Mexico Supreme Court decision controls. *See Lucero v. Bd. of Directors of Jemez Mountains Coop., Inc.*, 495 F. Supp. 3d 1135, 1172 (D.N.M. 2020) ("The Supreme Court of New Mexico has stated that, 'when considering claims under the NMHRA, we may look at federal civil rights adjudication for guidance in

interpreting the NMHRA. Our reliance on the methodology developed in the federal courts, however, should not be interpreted as an indication that we have adopted federal law as our own.'") (quoting *Ocana v. Am. Furniture Co.*, 2004-NMSC-018, ¶ 23, 91 P.3d 58, 68); *see also Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665–66 (10th Cir. 2007) ("In cases arising under diversity jurisdiction, the federal court's task is not to reach its own judgment regarding the substance of the common law, but simply to ascertain and apply the state law.…The federal court must follow the most recent decisions of the state's highest court.") (internal citations and quotations omitted).

Sousa attempts to distinguish *Garcia* by arguing that the plaintiff there did not establish a prima facie case. (Brief at 23.) This is of no moment because the New Mexico Supreme Court went on to fully analyze the pretext element of the plaintiff's claim. *Garcia*, 458 P.3d at 388-389. The New Mexico Supreme Court held that the plaintiff must show an employee "whose performance was 'nearly identical' so as to permit an inference of a discriminatory motive" when evaluating similarly situated comparators for purposes of establishing pretext. *Id*. There, as here, the plaintiff did not show that her performance issues were nearly identical to other employees such that she could point to a comparator treated more favorably.

The nearly identical comparator evidence standard applies, and Sousa did not and cannot prove any similarly situated comparator was treated more favorably under this or any other standard.

## IV. THE DISTRICT COURT PROPERLY ANALYZED SOUSA'S COMPARATOR EVIDENCE UNDER THE "COMPARABLE SERIOUSNESS" STANDARD AND PROPERLY FOUND THAT SOUSA DID NOT SHOW PRETEXT.

Sousa next argues that the district court erred in weighing evidence as to the seriousness of the cleanliness and pest-related issues in Sanchez's and Chaparro's restaurants. Sousa does not explain what this evidence is, and, once again, conflates the district court's appropriate assessment of undisputed record evidence with inappropriate weighing of the evidence. Sousa seems to take the position that any comparator analysis presents a fact issue for the jury. This is not what the Tenth Circuit or the NMHRA requires. Here, the district court properly analyzed the comparator evidence presented under the comparable seriousness standard and correctly determined that the alleged comparators did not violate work rules of comparable seriousness.

To prove pretext, an employee may present evidence that he was "treated differently from other similarly situated, nonprotected employees *who violated work rules of comparable seriousness.*" *Glover v. NMC Homecare, Inc.*, 13 F. App'x 896, 907 (10th Cir. 2001). It is important to note, however, that even if the employee provides evidence demonstrating disparate treatment, the employee's allegation of

32

pretext can still fail if the treatment is "trivial or accidental or explained by a nondiscriminatory motive." *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1168 (10th Cir. 2007). "The existence of differential treatment defeats summary judgment only if it could reasonably lead the trier of fact to infer a discriminatory motive; where the evidence of pretext supports only nondiscriminatory motives, such an inference is logically precluded and summary judgment for the employer is appropriate." *Herrera v. United Airlines, Inc.*, 754 F. App'x 684, 692 (10th Cir. 2018) (quoting *Kendrick*, 220 F.3d at 1232) (internal punctuation omitted).

Although Sousa argues that the comparable seriousness of the alleged cleanliness and pest-related issues in Sanchez's and Chaparro's restaurants creates issues of fact that a jury must decide, it does not. The record evidence demonstrates that Sanchez and Chaparro were not terminated for their alleged violations of workplace rules because they were not of comparable seriousness to those of Sousa's or did not constitute rules violations at all.

Sousa does not attempt to list or cite the evidence he believes demonstrates misconduct of comparable seriousness. If he did, Chipotle could clearly show, as it did to the district court, that none of the alleged misconduct of Sanchez and Chaparro is comparable to that of Sousa. Sousa also fails to address Chipotle's

nondiscriminatory explanation for the alleged differential treatment between Sousa, Sanchez, and Chaparro.

If Sousa had cited the record, it would show that the pest sightings reported at Sanchez's restaurants were either the result of a structural issue, not related to a cleanliness issue, not an infestation, not known by Hannan, or did not involve any improper handling on the part of Sanchez. (*See* App. Vol. 2 at 267-268.) Similarly, as it relates to the failed EcoSure audit that occurred at the UNM restaurant that Chaparro took over, there was no evidence of the store failing to meet cleanliness standards (as this is only one component of the audit), no evidence of the restaurant failing the audit again, and no evidence of any pest sightings or infestations during the audit. (*Id.*)

The severity of the issues that led to Sousa's termination were not of comparable seriousness to the alleged issues in Sanchez and Chaparro's restaurants, and Sousa did not introduce any evidence to the contrary. Sousa failed to meet cleanliness standards for four restaurants in one week and simultaneously failed to adequately remedy a two-month long cockroach infestation at the UNM restaurant.

Chipotle summarized all record evidence relating to issues in Sanchez's and Chaparro's restaurants in its reply brief in support of its motion for summary judgment and explained why each issue failed to demonstrate misconduct of comparable seriousness. (*See* App. Vol. 1 at 267-268.) While Chipotle will not

duplicate this summary here, especially in light of Sousa's failure to identify the comparator record evidence on which he is relying, the summary shows that Sousa failed to point to evidence of a single, non-structural related, pest issue that Hannan knew about. *See Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 719-720 (10th Cir. 2014) (explaining that the decisionmaker must have "specific knowledge" of the comparable employee's misconduct to be similarly situated).

And any attempt to compare Chaparro's single failed EcoSure Audit shortly after she received the restaurant from Sousa, the two are incomparable. In the time leading up to Sousa's termination, not only did four of his restaurants fail to meet cleanliness standards in a single week, but he also failed to remedy a two month-long cockroach infestation. (App. Vol. 1 at 111-112; App. Vol. 1 at 119-130.) Chaparro's single failed audit does not even compare, and the two cannot be considered similarly situated comparators.

Since Sousa failed to present any evidence of comparable pest or cleanliness issues about which Hannan was aware and has failed to present any evidence of any misconduct or inappropriate handling of any pest issue on the part of Sanchez or Chaparro, he has failed to demonstrate any similarly situated comparator, and he therefore cannot prove pretext. *See e.g., Timmerman*, 483 F.3d at 1121; *Hysten v. Burlington N. Santa Fe Ry. Co.*, 415 F. App'x 897, 907 (10th Cir. 2011). Therefore,

the district court correctly determined that Sousa failed to establish pretext through his comparator evidence.

## V.   THE DISTRICT COURT PROPERLY CONSIDERED ALL RECORD EVIDENCE WHEN IT DETERMINED THAT THERE WAS NO ISSUE OF MATERIAL FACT AS TO THE EXISTENCE OF PRETEXT.

Sousa's final contention is that, rather than weighing the evidence as a whole, the district court weighed each piece of pretext-related evidence separately in a legal vacuum. (Brief at 28.) This is not correct. Even if it were, Sousa does not show how a different review of the evidence should have resulted in a finding of pretext. The district court properly considered all Sousa's pretext evidence and correctly determined that it failed to demonstrate an issue of material fact.

As an initial matter, nothing about the district court's order indicates it weighed evidence in a legal vacuum. The district court organized its analysis according to the order in which arguments were made in Sousa's opposition brief. Courts can and should structure their analyses by theme or issue to enhance clarity and understandability. Other than the district court's decision to organize its analysis by issue, there is nothing to support Sousa's contention that the district court failed to consider Sousa's evidence as a whole. Instead, the district court exhaustively reviewed all Sousa's evidence and properly found he had failed to prove any issue of fact for trial.

Next, even assuming the district court did not properly review Sousa's evidence of pretext as a whole, when the evidence is viewed together, Sousa still fails to demonstrate a fact issue as to pretext. Sousa suggests that, if a plaintiff throws enough mud as to pretext at the wall, some of it should stick. (*See* Brief at 27-29.) But throwing mud at the pretext analysis is not the approach required by New Mexico or Tenth Circuit law.

Instead, to demonstrate pretext, a plaintiff must show the following:

> (1) evidence that the defendant's stated reason for the adverse employment action was false; (2) evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or (3) evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff.

*Mann v. XPO Logistics Freight, Inc.*, 819 F. App'x 585, 595 (10th Cir. 2020) (citing *Kendrick*, 220 F.3d at 1230. While evidence that falls into one of the aforementioned categories should be considered as a whole, there still must be sufficient evidence offered to create a genuine issue of material fact as to pretext in order to overcome summary judgment. *Bittel v. Pfizer, Inc.*, 307 F. App'x 132, 142 (10th Cir. 2009) (affirming the district court's grant of summary judgment despite appellant's contention that the evidence was not considered as a whole, because the evidence he offered (reviewed separately and as a whole) demonstrated he was terminated for policy violations and not due to his age).

If evidence does not meet one of the standards for showing pretext articulated in *Kendrick*, it does not magically convert itself into evidence of pretext because it is coupled with other evidence that does not constitute pretext. As King Solomon wisely exemplified, two half infants do not a whole make.

Even when considering the record as a whole and in the light most favorable to Sousa, Sousa has failed to present sufficient evidence to establish pretext. The undisputed record evidence does not support a finding that Hannan harbored any age-related discriminatory animus when terminating Sousa for unacceptable performance issues—issues that exposed Chipotle and its customers to significant health, safety, and financial risk.[5] *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148 (2000) ("The Supreme Court has instructed that an employer would be entitled to summary judgment if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination

---

[5] In the final argument section of his Brief (Brief at 27-29), Sousa alleges that the district court improperly weighed evidence regarding Rodriguez's termination and the allegedly disproportionate response to Sousa's performance. Sousa, however, does not explain how the district court improperly weighed this evidence or how the evidence constitutes pretext. Because issues that are not raised or adequately presented in an opening brief are deemed abandoned or waived, the Court should deem waived any argument about Rodriguez's termination or the response to Sousa's performance constituting pretext. *See Sawyers v. Norton*, 962 F.3d 1270, 1286 (10th Cir. 2020).

had occurred.") (internal punctuation omitted); *Robinson v. St. John Med. Ctr., Inc.*, 645 F. App'x 644, 654 (10th Cir. 2016) (affirming the district court's grant of summary judgment despite the employee's contention that the district court did not review her evidence as a whole because the employee's evidence still did not show weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for her termination).

A rational factfinder could come to only one conclusion regarding Sousa's termination: he was terminated because of his failure to adequately address and remedy a two-month long cockroach infestation and for failing to meet cleanliness standards in four site audits within the span of one week. The district court properly weighed all record evidence when determining that there was no genuine issue of material fact as to the existence of pretext, and its decision should be affirmed.

## <u>CONCLUSION</u>

This Court should affirm the district court's decision granting Chipotle's motion for summary judgment as to Sousa's claim for age discrimination under the NMHRA. The district court properly determined that Sousa failed to prove any genuine issue of material fact that he was discriminated against or terminated

because of his age. There is no evidence proving that Sousa was terminated for any reason other than the fact that he failed to keep his restaurants clean and safe.

## STATEMENT OF COUNSEL AS TO ORAL ARGUMENT

Chipotle does not believe that oral argument will assist the Court in rendering its decision in this appeal. This is a de novo review of an order granting Chipotle's motion for summary judgment. This case does not present novel legal issues or a complex or nuanced set of facts that oral argument would help the Court parse. It is enough that the Court has before it the complete factual record and all arguments considered by the district court. Chipotle does not request oral argument nor does it believe that oral argument would be of assistance to the Court in resolving the issues on appeal.

Respectfully submitted this <u>30th</u> day of June, 2025.

**CHIPOTLE SERVICES, LLC,**
By its attorneys,


*/s/ Betsy Bulat*_____
**MARTENSON, HASBROUCK & SIMON LLP**
Betsy Bulat
2573 Apple Valley Road NE
Atlanta, Georgia 30319
bbulat@martensonlaw.com
404-909-8108

40

Maya S. Marshall
2911 Turtle Creek Blvd., Suite 1280
Dallas, TX 75219
mmarshall@martensonlaw.com
404-390-2387

and

Carlos M. Quiñones
QUIÑONES LAW FIRM LLC
1223 S. Saint Francis Dr., Ste. C
Santa Fe, NM 87505-4053
(505)992-1515
quinoneslaw@cybermesa.com

## <u>CERTIFICATION OF COMPLIANCE</u>

1.      This document complies with the type-volume limitation of Fed. R. App. P. 32(g), excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 10th Cir. R. 32(B), this document contains 8,784 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word Version 2505 with 14 point font and Times New Roman.

Date: June 30, 2025

*/s/ Betsy Bulat*
_____

**MARTENSON, HASBROUCK & SIMON LLP**
Betsy Bulat

## <u>CERTIFICATE OF DIGITAL SUBMISSION</u>

Counsel for Appellant hereby certifies that all required privacy redactions have been made, which complies with the requirements of Federal Rules of Appellate Procedure 25(a)(5).

Per the Clerk's June 27, 2025 instructions for submitting this corrected brief, Counsel has not submitted hardcopies because there have been no directions to do so. Accordingly, Counsel does not at this time provide any certificate regarding the content of hardcopies as it relates to this digital submission.

Counsel further certifies that the ECF submission was scanned for viruses with the most recent version of a commercial virus scanning program (Vipre software version 13.1.8510; Definitions version 110617 – 7.99072 [June 30, 2025]; Vipre engine version 3.0.3.1654), and according to the program, is free of viruses.

*/s/ Betsy Bulat*
**MARTENSON, HASBROUCK & SIMON LLP**
Betsy Bulat

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 30, 2025, I electronically filed the foregoing using the court's CM/ECF system which will automatically send notice of such filing to all counsel of record.

Date: June 30, 2025

*/s/ Betsy Bulat*

**MARTENSON, HASBROUCK & SIMON LLP**
Betsy Bulat