No. 25-2008

In the United States Court of Appeals

for the Tenth Circuit

DONALD SOUSA,

*Plaintiff - Appellant,*

v.

CHIPOTLE SERVICES, LLC,

*Defendant - Appellee.*

On Appeal from the United States District
Court for the District of New Mexico
No. 1:23-CV-00811
Hon. James O. Browning

**APPELLANT'S REPLY BRIEF**

ALEXANDRA W. JONES
8205 SPAIN RD NE STE 111
ALBUQUERQUE, NM 87109
(505) 248-1400
AJONES@JONESLAWABQ.COM

*Attorney for Plaintiff - Appellant*
DONALD SOUSA

# Table of Contents

**Table of Authorities**......................................................................................ii

**I. INTRODUCTION** ................................................................................. 1

**II. ARGUMENT** ........................................................................................ 2

    **A. Sousa Did Not Waive Any Argument that the Written Warnings Created Issues of Fact Regarding Pretext** ...........2

    **B. The Reasons (or Lack of Proffered Reasons) for the Written Warnings Weigh Heavily on the Credibility and Believability of Hannan** ........................................................... 5

    **C. Chipotle Cannot Demonstrate that the "Nearly Identical" Standard Applies; Nor Can it Demonstrate that Sousa has Failed to Cite Comparator Evidence** ................................................................................................. 6

    **D. Chipotle Mischaracterizes the Standard for the Pretext Analysis under New Mexico Law** ...............................................8

**III. CONCLUSION** ................................................................................. 9

**CERTIFICATE OF COMPLIANCE** ................................................. 10

**CERTIFICATE OF SERVICE** ........................................................... 11

# Table of Authorities

*Cases*

**Bovee v. State Highway & Transp. Dep't**, 2003-NMCA-025, ¶ 13, 133 N.M. 519, 523, 65 P.3d 254, 258 ...................................................... 8

**Elmore v. Capstan, Inc.**, 58 F.3d 525, 530 (10th Cir. 1995) ........................................................................................................ 6

**Juneau v. Intel Corp.**, 2006-NMSC-002, ¶ 23, 139 N.M. 12, 19, 127 P.3d 548, 555 ................................................................................. 8, 9

**Riggs v. AirTran Airways, Inc.**, 497 F.3d 1108, 1117-18 (10th Cir. 2007) ................................................................................................. 5, 7

**United States Postal Service Board of Governors v. Aikens**, 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983) ................................................................................................................ 8

**Appellant's Reply Brief**

## I.   INTRODUCTION

This appeal hinges on whether the district court improperly weighed the credibility of witnesses and made findings of fact regarding evidence of pretext. Chipotle's response fails to demonstrate that there was no evidence of pretext presented, but instead relies on characterizations of the record and the legal standard for pretext. Under New Mexico law, the question of pretext should have been left for a jury to decide.

## II.  ARGUMENT

### A. Sousa Did Not Waive Any Argument that the Written Warnings Created Issues of Fact Regarding Pretext

Chipotle's argument that Sousa waived any argument that the written warnings created a pretext/credibility issue for Mr. Hannan mischaracterizes the record. *See* Doc. 24 at 29. Sousa argued in his response to the motion for summary judgment that the timing and nature of the written warnings called into question Mr. Hannan's motivations and credibility in his decision to terminate Sousa. *See* 1 App 159 ("Mr. Hannan's sham 'Final Warnings' demonstrate a breach of an implied policy for progressive discipline[], **as well as Mr. Hannan's lack of**

1

**candor.**")(emphasis added); *see also* 1 App. 160 (Chipotle's failure to identify a legitimate business reason for creating written warnings concurrent to a termination letter raises major questions as to the legitimacy of Mr. Sousa's termination); (The fact that Chipotle . . . deemed it necessary to create fake warnings to 'document' their decisions demonstrates that, at best, Chipotle had an implied progressive discipline policy that should have been followed (and wasn't); **or, at worst, that Mr. Hannan created false records to protect himself and his unfounded decision to terminate Mr. Sousa.")(emphasis added)**.

The district court acknowledged Sousa's credibility argument in its decision. *See* 2 App 452 ("Sousa draws two inferences from the concurrent warnings and termination (i) [the progressive discipline argument]. . . and *(ii) Hannan "created false records to protect himself and his unfounded decision to terminate" Sousa*)(emphasis added). The district court, however, failed to address this second argument in its analysis, but impliedly rejected it by finding that Hannan created the warnings only because HR told him to do so.

2

Regardless of whether the false warnings were indicative of an implied progressive discipline policy, they are relevant to Mr. Hannan's motivations and the issue of pretext. Sousa did not waive this argument. To the extent Chipotle is somehow arguing that Sousa's argument was not fully developed, such an argument is unsupported by the record.

Here, the district court readily acknowledged Sousa's argument that the false warnings created issues of pretext. The district court's blanket dismissal of the significance of these sham warnings necessarily required it to make credibility and fact determinations that were improper at the summary judgment stage.

**B. The Reasons (or Lack of Proffered Reasons) for the Written Warnings Weigh Heavily on the Credibility and Believability of Hannan.**

In arguing that there is no evidence that Hannan did not believe his reasons for terminating Sousa, Chipotle once again, asks the Court to make findings of fact and credit Chipotle's version of events over Sousa's. It also ignores the glaring fact that Chipotle has never once provided a legitimate business reason for providing two, final warnings concurrent to a termination letter.

The district court's comment about the warnings appearing "cooked up" is part of the record. While perhaps not evidence, this comment is indicative of the fact that if even the district court believes that the written warnings are suspicious, a reasonable fact-finder could find them to be suspicious. This is the epitome of pretext analysis in precluding summary judgment. The false warnings, created after-the-fact, are unequivocally evidence of pretext. *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1118 (10th Cir. 2007) (lack of contemporaneous documentation relevant to pretext analysis).

### C. Chipotle Cannot Demonstrate that the "Nearly Identical" Standard Applies; Nor Can it Demonstrate that Sousa has Failed to Cite Comparator Evidence.

Chipotle argues that Sousa cites no authority for the proposition that the "nearly identical standard" does not exist. Ironically, Chipotle cites no authority for the proposition that such a standard *does* apply once a prima facie case has been established. This is because there is no such authority and the "nearly identical" standard does not apply. *Elmore v. Capstan, Inc.,* 58 F.3d 525, 530 (10th Cir.1995)(holding that the rules and violations need not be "identical"). The "nearly identical" standard does not apply, here. *Garcia* is inapposite to this case.

With respect to the "comparable seriousness" of Sousa's offenses to others, Chipotle repeatedly makes self-serving arguments that are entirely unsupported by law, policy, or citation to the record. For example, Chipotle claims that Chaparro's single Failed EcoSure Audit, for which she received no disciplinary actions, whatsoever, is "incomparable." *See* 1 App 171-72 (describing the significance of an EcoSure Audit). What is the basis for this argument? Where is the policy that states failing an external audit from a third-party entity that is focused solely on cleanliness of a restaurant is less severe than arbitrary findings on internal audits? All of these issues are for a jury to decide—not Chipotle or the district court.

This argument also completely ignores the glaring undisputed fact: Sousa **did not fail** his restaurant audits. *See* 1 App 187 (Q: Is there a passing rate for an audit score? A: Yes Q: What is it? A: 85). He received an arbitrary "No" for cleanliness, but he passed the internal audits. Indeed, Chipotle stores across Arizona receive a "no" for cleanliness on **one out of three** audits. *See* 1 App 218. There is no dispute, however, that Chaparro failed an EcoSure audit, when Sousa had never once failed

5

such an important audit during the entirety of his career at Chipotle. *See* 1 App 171-72.

The mere fact that the parties are having to split hairs as to which audit is more important or severe is evidence in and of itself that there are material issues of fact for a jury to decide in this case. Chipotle's self-serving attempts to categorize Sanchez's pest problems as "structural" or unknown to Hannan further illustrate that these issues are fact issues regarding the issues of "comparable seriousness." *See, e.g.* 1 App 147 (citing Exhibits 12 and 13 that provide proof of Mr. Sanchez's ongoing pest problems at this store). Whether Chipotle's treatment of Sanchez and Chaparro qualified as disparate treatment of similarly situated individuals should have been a question for a jury. *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir.2007) ("[W]hether two employees are similarly situated ordinarily presents a question of fact for the jury.")

**D. Chipotle Mischaracterizes the Standard for the Pretext Analysis under New Mexico Law.**

Overall, Chipotle fundamentally misunderstands the role of courts versus juries in NMHRA discrimination cases. New Mexico does not require pretext to be proven by any specific type of evidence; the specific

6

evidence needed to show pretext will necessarily vary depending on the circumstances of each case. *See Bovee v. State Highway & Transp. Dep't*, 2003-NMCA-025, ¶ 13, 133 N.M. 519, 523, 65 P.3d 254, 258. This framework, however, as the Supreme Court pointed out in United States *Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983), was " 'never intended to be rigid, mechanized, or ritualistic . . . Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.' "). Notably absent from Chipotle's brief is any citation to the controlling language in NMRHA cases, *Juneau v. Intel Corp.*, which states:

> [W]hether a proffered justification is legitimate, or is merely an excuse to cover up illegal conduct, is largely a credibility issue and often requires the use of circumstantial evidence. It is rare a defendant keeps documents or makes statements that directly indicate a retaliatory motive for terminating an employee. Issues such as this should normally be left exclusively to the province of the jury. Judges should not make credibility determinations or weigh circumstantial evidence at the summary judgment stage.

*Juneau v. Intel Corp.*, 2006-NMSC-002, ¶ 23, 139 N.M. 12, 19, 127 P.3d 548, 555. This omission is telling, as Chipotle's entire argument depends on courts making the very credibility and factual determinations that

7

*Juneau* reserves for juries. Chipotle conspicuously ignores this holding on the jury's role in pretext determinations.

Whether the district court or Chipotle finds Sousa's evidence of pretext to be compelling or persuasive is not the standard; the only standard is whether evidence of pretext exists. Weighed as a whole, Sousa has cited multiple sources of evidence that demonstrate pretext, including: 1) Hannan's creation of false written warnings (false in their factual content and by the glaring fact that they were never intended to operate as warnings)(*see* 1 App 146-47; *see also* 1 App 179); 2) the disparate treatment of Sanchez and Chaparro (employees in their late 20s) who were never terminated, much less disciplined, for pest problems and cleanliness problems (see 1 App 147-48); 3) the only two older individuals on Hannan's team (Sousa and Rodriguez) were terminated within two months of each other, and both replaced with individuals in their 20s (see 1 App 144-45); and 4) Mr. Sousa's termination was disproportionate to his impeccable track record (see 1 App. 144). This evidence was proper for consideration by a jury, not by the district court.

## III. CONCLUSION

For the foregoing reasons, Appellant-Plaintiff respectfully requests that the Court reverse the district court's order granting summary judgment, and remand this case for further proceedings.

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 1586 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface, **14-pt Century Schoolbook**.

Dated: July 21, 2025                         By: /s/ Alexandra Jones

## Certificate of Service

I hereby certify that I electronically filed the foregoing **APPELLANT'S REPLY BRIEF** with the Clerk of the Court by using the Appellate CM/ ECF system on **July 21, 2025**. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

|  |  |
|---|---|
|  | Jones Law Firm, LLC |
|  | Respectfully submitted, |
| Dated: July 21, 2025 | By: /s/ Alexandra Jones |
|  | *Attorney for Plaintiff - Appellant* |